Plaintiff is a company engaged in the automobile finance business. It instituted this suit to foreclose by ordinary process on a mortgage on an automobile owned by defendant which mortgage was given to secure the unpaid purchase price on said car.
Defendant set up two defenses to the foreclosure proceedings: First, that there had been a novation of the indebtedness, and, second, that he was entitled to more credits than plaintiff had allowed him.
The lower court awarded judgment for the plaintiff as prayed for and defendant is prosecuting this appeal.
Plaintiff is the holder and owner in good faith before maturity and in its ordinary course of business of a promissory mortgage note executed by the Alexandria Heating Air Conditioning Company for the principal sum of $1,377.12, with interest and attorney's fees. The principal amount was made payable in 24 monthly installments and represented the unpaid portion of the purchase price of a LaSalle sedan automobile. The note was secured by a chattel mortgage duly executed and recorded against said automobile which was sold to said mortgagors by the Ponchartrain Motor Company, Inc., on the 9th day of February, 1939. On November 22, 1939, the said mortgagor, with the consent of plaintiff, transferred the LaSalle automobile to defendant. A part of the consideration for the transfer was the assumption by defendant of the unpaid balance on the purchase price which at the time amounted to $860.70. Defendant made several payments on the note. In September, 1940, he was delinquent by four or five months in his payments. The balance due on September 9, 1940, was $429.66.
A representative of plaintiff met with the defendant and agreed to an extension of time within which defendant was to pay the balance due. The agreement was signed by defendant in blank with the understanding that it was to be sent to the branch office and filled out there, if approved. This was done, the agreement providing for seven monthly payments beginning October 1, 1940, for the amounts of $61.38 each. *Page 185 
A coupon book showing the monthly payments due in the amount of $61.38 was mailed to defendant. This document provides that the terms and conditions of the original contract, except as modified by this extension, are to remain in full force and effect. The October and November installments under this last agreement were paid but defendant failed to pay the installment due December 1, 1940, and January 1, 1941, thereby under the terms of the mortgage maturing all the remaining payments, being a total amount of $304.97 with 8% per annum interest from December 1, 1940, until paid and 25% as attorney's fees.
It is defendant's contention that the extension granted in the oral agreement between him and plaintiff's representative provided for monthly payments of $35 per month and that the agreement novated the original contract and obligation. There is no merit to this contention. Plaintiff's representative did not have authority to alter or change the original contract in any way. Anything he might have agreed to had to be approved by the plaintiff company and this fact was known to defendant, as is evidenced by his signing the blank agreement which he knew was to be sent to the branch office to be filled out and approved. He also knew what the extension was as approved by plaintiff's branch office when he received the coupon book showing the amount due each month thereafter. Furthermore, he made payments in accordance with this agreement and it has not been proven that plaintiff's representative ever agreed to a payment of $35 per month. It is true that plaintiff billed defendant in the month of October for $35.68, but he paid that amount and within a few days plaintiff wrote him demanding the difference between $35.68 and $61.38, and he paid the difference. One of plaintiff's officers who testified in the case said he had made an error in stating the monthly payment was $35.68 and all bills thereafter were for the correct amount. Regardless of what the agreement was between plaintiff's representative and defendant, there was never an agreement between them to extinguish the original indebtedness and to substitute an unsecured obligation in its stead.
Article 2185 of the Revised Civil Code defines "novation" as follows: "Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place". And Article 2190, Revised Civil Code, provides that the intention to make it must clearly result from the terms of the agreement or by a full discharge of the original debt and it is not assumed.
The original obligation in this case was never extinguished or intended to be. Defendant was only given an extension of time to pay the original obligation and none of the provisions of the Civil Code above referred to were complied with. The defense of novation urged by defendant is therefore without merit.
Defendant's other contention is that on the night of September 9, 1940, he paid in cash to the plaintiff's representative one month's installment for which he was not given credit. Plaintiff's representative denied that the payment was made. Defendant's brother who was present at the meeting and who paid to the representative two monthly installments by check for defendant fails to corroborate him. If any payment was made by defendant on that occasion, his brother knew nothing of it. The burden was on defendant to prove the payment and he has failed to meet that burden. Due credit was given for the payment made by defendant's brother.
We find no error in the judgment of the lower court and it is affirmed, with costs.